WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

                Plaintiff/Respondent,

v.

Raul Christian Lopez-Arroyo,

                Defendant/Movant.

No. CR 08-1126-TUC-CKJ
No. CIV 13-1992-TUC-CKJ

**ORDER**

      Pending before the Court is Movant's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CR 08-1126, Doc.. 155; CIV 13-1992, Doc. 7.) and Movant's Motion to Expedite Ruling of 28 U.S.C. 22 Proceedings (CIV 13-1992, Doc. 20). The Court will grant the motion to expedite, deny the motion to vacate, set aside, or correct sentence, and dismiss the claims. Additionally, a certificate of appealability shall not issue as to Lopez-Arroyo's claims.

I. *Background*

   On September 10, 2008, Raul Christian Lopez-Arroyo ("Lopez-Arroyo") was indicted on one count of Conspiracy to Possess with Intent to Distribute Marijuana, and one count of

Possession with Intent to Distribute Over 1,000 kilograms of Marijuana. (CR 08-1126, Doc. 5.)[1] Lopez-Arroyo was appointed counsel.

After the initially appointed attorney and two subsequent attorneys were permitted to withdraw, attorney Rodolfo Valenzuela was appointed to represent Lopez-Arroyo on July 28, 2009. (Minute Entry, Doc. 50.) Subsequent motions to replace Valenzuela with new counsel were denied. (Docs. 55, 58-60.)

Mr. Valenzuela asserts prior to trial, in August 2009, the government offered a plea agreement with a stipulated range of 70-87 months imprisonment. (CIV 13-1992, Aff. of Rodolfo Valenzuela, Doc. 12-1, ¶ 12.) Valenzuela attests that at the time the plea was offered he explained to Lopez-Arroyo the elements of the charges against him. *Id.* Valenzuela also indicates he described the rights he would be giving up, the sentencing ranges, and the consequences of both entering a guilty plea and going to trial. *Id.* at ¶ 13. Valenzuela states after "extensive" conversation about the plea agreement, Lopez-Arroyo decided not to accept the plea offer and to proceed to trial. *Id.* at ¶ 14.

On the first day of jury trial, prior to the jury's presence in the courtroom, in front of Lopez-Arroyo and in open court, Valenzuela stated the following:

> Just that, Your Honor, I went to see Mr. Lopez-Arroyo on Sunday. He was apparently transferred to FCI, so I didn't get to see him on that day, and so I met with him this morning just to talk about the case again. Clearly - - *and he understands that we had suggested he take the plea based on what I had at the time*. . . . In fact, prior to this, I met with my client and he wanted a speedy trial. He wanted a speedy trial. I'm not quite sure he understands, you know, the legal proceedings, and he is getting some advice from someone at CCA at the time. But now, after talking to him and explaining to him that, based on the conversation that I had, it certainly gives me something to work with, now I think he has a little more understanding of what I'm going to try to do for him.

(Tr. of Jury Trial – Day One, Doc. 134, p. 8-9) (emphasis added).

During trial, the prosecution called undercover ICE Agent Patrick McKenna and Special Agent Eric Feldman to testify.

---

[1] Unless otherwise noted, the docket numbers referenced are from CR 08-1126-TUC-CKJ.

On the second day of trial, Lopez-Arroyo indicated he wished to halt proceedings and enter a guilty plea. (Change of Plea, Doc. 131, p. 2.) Lopez-Arroyo asserts that prior to his change of plea, Valenzuela and the government told him they needed to atone for their error and offered him a reduced sentence with the guarantee his children would be returned to the United States. (Def.'s Amended Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Fed. Custody Memorandum, Doc. 8, p. 3.) Valenzuela and government counsel, in contrast, assert that no agreement was made at that time; that prosecution had withdrawn the plea agreement at the commencement of trial, and there was no knowledge Lopez-Arroyo's children were ever deported, nor any promises for their return. (CIV 13-1992, Gov't Response to Def.'s Am. Mot. to Vacate, Doc. 12, p. 15; Valenzuela Aff., Doc. 12-1, ¶ 13.) On November 4, 2009, in the middle of the trial, Lopez-Arroyo pleaded guilty to Counts One and Two of the indictment. (Doc. 131, p. 14.)

The change of plea transcript indicates that Lopez-Arroyo understood there was no agreement with the government, that no one had forced, threatened, or coerced Lopez-Arroyo into pleading guilty, that Lopez-Arroyo voluntarily pleaded guilty and no promises had been made to Lopez-Arroyo. *Id.* at pp. 8-10. The review further reveals that the district court judge advised Lopez-Arroyo of the sentencing range and consequences, the mandatory minimum sentence, the discretion of the sentencing judge, and Lopez-Arroyo's constitutional rights. *Id.* at pp. 3-4, 6-8. Moreover, Lopez-Arroyo stated that he was satisfied with the services of his attorney. *Id.* at 10. Additionally, the proceedings were translated by court interpreters. *See generally* 11/4/2009 MEO, Doc. 71.

After the change of plea, Valenzuela filed a Motion to Withdraw. (Mot. to Withdraw Rodolfo Valenzuela, Doc. 102.) Lopez-Arroyo was assigned a fifth attorney, Jose Lerma, who was also subsequently permitted to withdraw while the matter was on appeal. (Mot. to Withdraw Jose Lerma, Doc. 112; Order of U.S. Ct. of App., Doc. 127.)

On December 2, 2010, all matters proceeded to sentencing before the Hon. John M. Roll. Lopez-Arroyo was sentenced to 192 months in prison followed by 60 months of supervised release for the drug convictions. (Tr. of Sentencing, Doc. 138, p. 26.) At

sentencing, Lerma announced that while Lopez-Arroyo preferred an interpreter, he also spoke a bit of English. *Id.* at 2.

A Notice of Appeal was filed on December 8, 2010. (Doc. 12-4.) On April 19, 2012, the Ninth Circuit Court of Appeals affirmed Lopez-Arroyo's sentence in an unpublished opinion, holding that the sentence was not imposed in violation of the Sixth Amendment, there were no procedural errors, and the sentence imposed by the district court was substantively reasonable. (Doc. 146-1, p. 3.) The appellate court declined to consider Lopez-Arroyo's claim on direct appeal that the district court should have continued sentencing *sua sponte*. *Id.* The mandate was issued on May 11, 2012. (Mandate, Doc. 146.)

On December 2, 2013, Lopez-Arroyo filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  (CIV 13-1992, Doc. 1.)  On June 5, 2014, Lopez-Arroyo filed an Amended Motion and Memorandum of Law. (CIV 13-1992, Doc. 7.) The government has filed a response and Lopez-Arroyo has filed a reply.

II.  *Section 2255 Motion*

In his § 2255 Motion, Lopez-Arroyo alleges three grounds for relief. In Ground One, he alleges he was denied effective assistance of counsel because he was induced to waive trial and plead guilty based on a promise for a more lenient sentence and other mitigating factors that were rejected by the court. In Ground Two, Lopez-Arroyo alleges counsel was ineffective because Valenzuela did not challenge the accuracy of the translation and interpretation of the plea colloquy. In Ground Three, Lopez-Arroyo asserts actual innocence of Count One, the violation of 21 U.S.C. §846.

A.  *Statute of Limitations and Equitable Tolling*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for 28 U.S.C. § 2255 motions. *See* 28 U.S.C. § 2255; *United States v. Skurdal*, 341 F.3d 921 (9th Cir. 2003). The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*United States v. Monreal*, 301 F.3d 1127, 1131 n. ** (9th Cir. 2002) (quoting 28 U.S.C. § 2255).

The Supreme Court has held "that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532 (2003); *see also United States v. Garcia*, 210 F.3d 1058, 1060 (9th Cir. 2000) (holding that the one year limitations period for filing a motion to attack a conviction under 28 U.S.C. § 2255 begins when the time for filing a petition for a writ of certiorari expires). The time for seeking review to the Supreme Court (if no petition for rehearing has been filed in the lower court) expires "90 days after entry of judgment," which is from the "date of entry or order sought to be reviewed, and not from the issuance date of the mandate[.]" Sup. Ct. R. 13(1), 13(3).

In Lopez-Arroyo's case, the appellate court issued its decision on April 19, 2012. Ninety days from that date was July 18, 2012. The time for Lopez-Arroyo to file was within one year of that date, i.e., July 18, 2013. Lopez-Arroyo filed his motion on December 2, 2013. The Court finds Lopez-Arroyo's § 2255 motion was not timely filed.

The Ninth Circuit has held that the statute of limitations may be equitably tolled in a 28 U.S.C. § 2255 action if "(1) the petitioner has diligently pursued his rights, and (2) extraordinary circumstances exist." *United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045

(9th Cir. 2010) (*citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also United States v. Battles*, 362 F.3d 1195, 1196-97 (9th Cir. 2004). Few cases justify equitable tolling, *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005), and "the threshold necessary to trigger equitable tolling . . . is very high." *Aguirre-Ganceda*, 592 F.3d at 1045 (*quoting Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006)). Moreover, the burden to establish the requirements of equitable tolling is on a petitioner. *Pace*, 544 U.S. at 418; *see also Holland v. Florida*, 560 U.S. 631, 645-46 (2010) (petitioner must establish he is entitled to equitable tolling in § 2254 action). Indeed, "[e]quitable tolling is not even a possibility until a petitioner submits proof that external forces, and not a petitioner's lack of diligence, accounted for the failure to file a timely petition." *Smith v. Ratelle*, 323 F.3d 813, 821 (9th Cir. 2003); *see also Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009), *quoting Harris v. Carter*, 515 F.3d 1051, 1054 (9th Cir. 2008) (applying "the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling'").[1]

Lopez-Arroyo asserts "he suffers from a mental impairment through a language impediment that prevented him from filing a timely 2255 motion." (Def.'s Reply Br., CIV 13-1992, Doc. 18, p. 2.) Lopez-Arroyo asserts the Bureau of Prisons "does not provide [S]panish legal material . . . but they do not provide an interpreter that will go to the legal library and interpret the Federal rules of criminal procedure, civil procedure and the habeas corpus procedure." *Id.* Lopez-Arroyo also states:

> The defendant asserts that he was not even aware that there was a legal vehicle to challenge trial counsel's ineffectiveness, but when the defendant became aware of the habeas corpus procedure, he immediately filed an untimely 2255 motion. Defendant asserts that the B.O.P.'s failure to provide [S]panish legal material

---

[1]For the purpose of equitable tolling, 28 U.S.C. §§ 2254 and 2255 are treated similarly. *Battles*, 362 F.3d at 1196-97.

prevented him from filing a timely 2255 motion, which was totally out of the defendant's control.

*Id*. The government has not responded to Lopez-Arroyo's claim – e.g., the government has not asserted Spanish legal notices are provided at the prison. The government does point out, however, that Lopez-Arroyo had attached a "Motion to File a Belated § 2255 Based on a Failure of Counsel at USP Lompoc Filing Said Motion as Directed by Petitioner" to his December 2, 2013 § 2255 motion. (CIV 13-1992, Doc. 12, p. 10, n. 3).

The Ninth Circuit has determined that claims of ignorance of the law and illiteracy are insufficient to justify equitable tolling. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Robinson v. Kramer*, 588 F.3d 1212, 1217 (9th Cir. 2009); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (*pro se* prisoner's illiteracy and lack of knowledge of the law was unfortunate but insufficient to establish cause). Lopez-Arroyo has not asserted that he became aware of the habeas corpus procedure prior to the deadline for filing a timely motion. Indeed, in his affidavit, Lopez-Arroyo asserts he did not know he "could file a habeas corpus motion challenging [his] attorney's ineffectiveness, until [he] filed the untimely motion through jailhouse representation." (CIV 13-1992, Doc. 19, p. 1.) The government has not provided any contradictory information (e.g., prison policy of posting legal notices in Spanish or affidavit from prison official regarding any legal notices posted in Spanish in Lopez-Arroyo's facility).

However, "a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal material in his own language or translation assistance from an inmate, library personnel, or other source." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (2005); *De Jesus Cameron Alarcon v. Marshall*, 188 F. App'x. 608, 610 (9th Cir. 2006). Lopez-Arroyo has not asserted he became aware of the habeas corpus procedure prior to the deadline for filing a timely motion, but he notes that he sought assistance for his appeals prior to tolling but was unsuccessful. Because Lopez-Arroyo was allegedly denied Spanish legal materials, and was not able to secure the help of a translator during the limitations period

despite due diligence, the Court finds he has established extraordinary circumstances and is entitled to equitable tolling of the statute of limitations. The court will review Lopez-Arroyo's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

### III. *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, Lopez-Arroyo must satisfy a two-pronged test demonstrating: (1) deficient performance, such that counsel's actions were outside the wide range of professionally competent assistance, and (2) prejudice. *Strickland v. Washington,* 466 U.S. 668, 687-688, (1984); *Carrera v. Ayers*, 670 F.3d 938, 942 (9th Cir. 2011). To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Stanley v. Schiro*, 598 F.3d 612, 619 (9th Cir. 2010); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Carrera*, 670 F.3d at 943 (*quoting Strickland*, 466 U.S. at 689); *see Padilla v. Kentucky*, 559 U.S. 356, 371-72 (2010).

Moreover, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988). A plea colloquy that satisfies "Rule 11's requirements will lead to a plea being considered

knowing and voluntary, unless some misrepresentation or gross mischaracterization by counsel has tainted the plea." *United States v. Jeronimo*, 398 F.3d 1149, 1157 n.5 (9th Cir. 2005), *overruled on other grounds*.

Where the allegations of a petitioner contradict statements made in court, credibility must be assessed. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). An evidentiary hearing is mandatory if "it appears that the state trier of fact did not afford the . . . applicant a full and fair fact hearing." *Townsend v. Sam*, 372 U.S. 293, *313* (1963). An evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988). Courts may expand the record with other documentary evidence, use their own notes and recollections, and use common sense. *Shah*, 878 F.2d at 1159; *see United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988).

A.  *Ground One: Coercion and Plea Promises*

A guilty plea is valid if it is a voluntary and knowing choice made by the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *see Boykin v. Alabama*, 395 U.S. 238 (1969). If a defendant enters a plea of guilty, it is considered voluntary if the defendant is fully aware of the consequences of the plea agreement. *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1998); *see also United States v. Adams*, 432 F.3d 1092, 1096 (9th Cir. 2006). A guilty plea obtained through coercion is involuntary and invalid. *Brady v. United States*, 397 U.S. 742, 750 (1970). "[R]epresentations of the defendant, his lawyer, and the prosecutor . . . as well as the findings of the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blacklege v. Allison*, 431 U.S. 63, 74 (1977). "When the merits of [a habeas application] can be determined on the record before the court, a hearing is not required nor is the presence of the petitioner necessary." *Yeaman v. United States*, 326 F.2d 293, 294 (9th Cir. 1963).

Lopez-Arroyo's allegation of coercion fails to overcome the strong presumption of verity given to his sworn statement. During the change of plea, the Court explained the

elements of the crimes he faced, and the fact there was no plea agreement in place. Lopez-Arroyo was notified that he could be sentenced from ten years to life in prison. He stated he understood the sentencing ranges. Further, Lopez-Arroyo affirmed he had not been coerced or forced to enter a guilty plea. Lopez-Arroyo was made fully aware at the change of plea proceeding of the consequences of pleading guilty without a plea agreement.

Lopez-Arroyo asserts he was coerced to plead guilty, and that the prosecution and Valenzuela made him an offer to return his children and reduce his sentence in return for his plea. Lopez-Arroyo stated under oath, however, that no offers or promises were made to him. Both the government and Valenzuela corroborate Lopez-Arroyo's sworn statement; no promises were made to Lopez-Arroyo and no plea agreement was offered during trial. Lopez-Arroyo was given the opportunity at the change of plea hearing to attest that the prosecution promised a different agreement than the ten years to life presented by the Court, but he failed to do so. Lopez-Arroyo provides no reason why, in the face of being informed he could face up to a life sentence, he did not inform the court he had another agreement in place.

Lopez-Arroyo's allegations of coercion are inconsistent with his sworn testimony and not credible. The Court finds that Lopez-Arroyo's plea was voluntary. Based on the record, he was fully aware of the sentence range available to the Court. The motion to vacate based on Ground One will be denied.

B. *Failure to Inform Lopez-Arroyo of Plea Prior to Trial*

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S.Ct. at 1409. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution

canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.*

Lopez-Arroyo alleges Valenzuela failed to inform him of a plea deal until the second day of trial. However, Valenzuela's statements on record indicate that, prior to trial, Lopez-Arroyo was advised to accept the plea agreement offered by the prosecution and nonetheless decided to proceed to trial. (Doc. 134, pp. 8-9.) This obviates the need for an additional evidentiary hearing.

Lopez-Arroyo's statements made during his plea proceeding and statements of Valenzuela all belie Lopez-Arroyo's claims he was not informed of the plea agreement until the second day of trial. Lopez-Arroyo claims during trial the government promised a plea offer of 64-86 months[2] as well as the return of Lopez-Arroyo's children to the United States. Lopez-Arroyo further alleges that if he had been informed of the plea deal before trial he would have accepted the offer.

In contrast, Valenzuela asserts that in August 2009, approximately three months prior to trial, Valenzuela extensively discussed the plea agreement offered by the government with Lopez-Arroyo. This discussion included sentencing ranges, elements of the charges, and the consequences of both taking the plea offer and proceeding to trial. Valenzuela states at no time was an offer made to return Lopez-Arroyo's children as a part of the plea agreement. This assertion was corroborated by the government. In addition, the prosecution was neither aware of nor is there any documentation of deportation. Valenzuela adds that after this discussion Lopez-Arroyo indicated he preferred to go to trial.

Early in the first day of trial, Valenzuela told the Court that he had previously suggested Lopez-Arroyo take the plea deal offered by the prosecution but Lopez-Arroyo was insistent on

---

[2] Lopez-Arroyo's asserted plea range in his subsequent Affidavit in Support of Reply Brief is inconsistent with this range; it stated the government's offer at trial was 70-87 months. The Affidavit was submitted after the government's response stated its plea offer prior to trial was for 70-87 months. (Doc. 19.)

proceeding to trial.[3] Valenzuela added that Lopez-Arroyo was insistent on a speedy trial. This statement was made in open court, uncontested, in the presence of Lopez-Arroyo. In a post-conviction letter to Valenzuela, Lopez-Arroyo concedes, "You told me in the first step of my misfortune that if I did not take the plead [sic] the Plaintiff would send me away for two hundred months." (Letter, Doc. 99, p. 3.) Lopez-Arroyo fails to show he was not informed of the plea agreement, nor has he shown a reasonable probability he was willing to take the plea agreement when it was offered.

Lopez-Arroyo claims he believed there was a plea deal in place when he plead guilty. In contrast, the prosecution states the offer was withdrawn after Lopez-Arroyo rejected it prior to the commencement of trial. Lopez-Arroyo asserts, "[A]fter a meeting between my attorney, the prosecutor and the judge, petitioner was told that he had a plea deal in place and the trial was stopped." (CIV 13-1992, Doc. 8, p. 3.) Court transcripts of the change of plea proceedings reveal the opposite; that in the presence of counsel, the government, and the judge, Lopez-Arroyo was informed twice there was no plea deal in place. He was then given the opportunity to continue with his trial. He chose to proceed with the change of plea. Lopez-Arroyo was also clearly informed three times that, at a minimum, he would have to receive a ten-year sentence and up to a life sentence if he pled guilty. This is over thirty months more than what Lopez-Arroyo asserts he understood was the length of the plea agreement offered just prior to the change of plea. Yet, he responded "Yes, I understand," and proceeded to plead guilty to both counts.

The record sufficiently reflects that Lopez-Arroyo's plea of guilty was voluntary, based on his own admission, under oath, that no other promises had been made to him. In addition, there is sufficient evidence on the record that Valenzuela did inform Lopez-Arroyo of the plea agreement prior to trial and Lopez-Arroyo knowingly decided to proceed to trial. As such,

---

[3] Valenzuela indicated during trial that Lopez-Arroyo may not have understood the technicalities of the legal proceedings, nonetheless, the court transcript reaffirms Valenzuela's assertion that Lopez-Arroyo was advised of the plea prior to trial.

Lopez-Arroyo has failed to show counsel's actions were deficient, and his ineffective assistance claim on Ground One is denied.

IV. *Ground Two: Counsel's Failure to Challenge Interpreter*

Lopez-Arroyo asserts counsel was rendered ineffective because he failed to challenge the qualifications of the interpreter and the accuracy of the interpreter's translation during the change of plea colloquy. Lopez-Arroyo fails to show Valenzuela's acts were deficient or his failure to question the translation resulted in prejudice.

Under the Court Interpreters Act, in United States judicial proceedings, "[t]he presiding judicial officer . . . shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available . . . the services of an otherwise qualified interpreter if the defendant speaks primarily a language other than English, and this fact would impair the defendant's comprehension and communication in judicial proceedings." 28 U.S.C.A. § 1827(d)(1)(A)(1988). U.S. District Court requires interpreters render an accurate translation without alteration. *Standards for Performance and Professional Responsibility for Contract Court Interpreters in the Federal Courts*, Attachment 10.2, *see* http://www.uscourts.gov/services-forms/federal-court-interpreters. "If any interpreter is unable to communicate effectively with the presiding judicial officer, the United States attorney, a party (including a defendant in a criminal case), or a witness, the presiding judicial officer shall dismiss such interpreter and obtain the services of another." 29 U.S.C.A. § 1827(e)(1).[4] Counsel is not ineffective in failing to recognize language difficulties when a

---

[4] The Seventh Circuit has elaborated, "The district court is afforded wide discretion in implementing the Court Interpreter's Act because it is in the best position to evaluate the need for and the performance of interpreters. *United States v. Sandoval*, 347 F.3d 627, 632(7th Cir. 2003) (citing *United States v. Johnson*, 248 F.3d 655, 661 (7th Cir. 2001). Therefore, its decisions on the appointment and use of interpreters are generally reviewed by this court for an abuse of discretion. *Id.* However, when a defendant fails to object to the interpreter at trial, the alleged error is reviewed on appeal under the plain error standard. *Id.* (citing *United States v. Osuna*, 189 F.3d 1289, 1292 (10th Cir. 1999); *United States v. Paz*, 981 F.2d 199, 201 (5th Cir. 1992)).

defendant is consistently responsive and never indicates to the court difficulty understanding despite opportunities to do so. *United States v. Finze*, 428 F. App'x 672,677 (9th Cir. 2011); *United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir. 2003); Gonzalez v. U.S., 33 F.3d 1047, 1051 (9th Cir. 1994).

Based on the record, it was not necessary for Valenzuela to question the qualifications of the court selected interpreter. District Courts have standards for employing qualified interpreters. In addition, petitioner does not cite any case law requiring a defense attorney to question an employed federal court interpreter's qualifications. Counsel's assumption that U.S. District Court interpreters at each proceeding were qualified was reasonable and did not amount to ineffective assistance.

In addition, there was no indication to either Valenzuela or the Court that the translation was deficient. Lopez-Arroyo was given a translator for all judicial proceedings. He consistently stated he understood the proceedings, and never brought to Valenzuela's attention that he did not understand the interpreter or that the interpretation was incorrect.

Lopez-Arroyo contests a specific portion of the change of plea hearing in which he confirmed the factual basis of Count One. (Doc. 131, pp. 11-13.) After the prosecution stated the factual basis for Count One, the Court asked Lopez-Arroyo whether he conspired with another individual in addition to the informant. Lopez-Arroyo attests he stated twice, "There was one other person, the informant," and the third time he was asked to clarify if there were additional individuals other than the informant he stated, "No, Your Honor. There was one other person, the informant." Yet, the translation in the transcript shows his answer to be, "No, Your Honor, the informant and one other person." After this statement, Lopez-Arroyo was asked again by the Court whether he conspired with someone who was not the informant. The translation of his answer was, "That's right, counsel." Lopez-Arroyo contests this translation, assumedly because the proper address to the Court would be "That's right, Your Honor" and not "That's right, counsel."

Even if the Court finds, *arguendo*, that Lopez-Arroyo's responses were translated in error, it was not an error that would render Valenzuela's counsel deficient. During sentencing,

attorney Lerma indicated that while Lopez-Arroyo primarily spoke Spanish, he understood some English. Even if he did not understand any English, the difference in his first contested response from the translator's could have been apparent to Lopez-Arroyo. If the only words that should have been translated were exactly the same as the previous two answers, Lopez-Arroyo's familiarity with those words could have made any discrepancy in this statement apparent enough to allow him to indicate to Valenzuela an error in translation. He gave no indication the words were in error.

At the time of the second contested answer, Lopez-Arroyo did not complain the translation of "Your Honor" was not included in his answer. During the change of plea, Lopez-Arroyo used the term "Your Honor" thirty-seven times, enough to make the translation from "Tu Honor" to "Your Honor" familiar even without any former knowledge of English. He did not indicate to his attorney any such disparity.

Also, Valenzuela was assisting Lopez-Arroyo in his change of plea to guilty, and it was not unreasonable to rely upon the court interpreter's translation which stated he acted in accordance with the elements of the conspiracy charge. Valenzuela knew his client was changing his plea to guilty after he had personally made Lopez-Arroyo aware of the elements. Valenzuela affirmed there was a sufficient factual basis for the change of plea. Subsequent to the supposed error, Lopez-Arroyo did plead guilty. With no indication of error, there was no reason to question the translation. Reliance on the translation of the interpreter was reasonable, and was in accordance with how Lopez-Arroyo indicated he wished to proceed.

Finally, Lopez-Arroyo fails to show a reasonable probability that questioning the interpretation would have changed the outcome of the proceedings. "Circumstantial evidence can be used to prove any fact." *United States v. Ramirez-Rodriguez,* 552 F.2d 883, 884 (9th Cir. 1977); *see United States v. Kelly,* 527 F.2d 961, 965 (9th Cir. 1976)*; see also Payne v. Borg*, 982 F.2d 335, 339 (9th Cir. 1992). "[T]he government [is] not required to prove the existence of an explicit agreement to prove conspiracy . . . Instead, the existence of an agreement to commit an unlawful act can 'be inferred from the facts and circumstances of the

case.'" *United States v. Renzi*, 769 F.3d 731, 758 (9th Cir. 2014)(quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)).

Lopez-Arroyo states the excerpt demonstrates inaccuracies in the translation which suggest he did not conspire with another individual, however, the judge noted that he had heard a sufficient amount of testimony at trial and was satisfied he could proceed with the change of plea. (C.O.P., p. 11.) Undercover ICE Agent Patrick McKenna testified at trial that, while arranging the transport with Lopez-Arroyo, McKenna witnessed several instances indicating Lopez-Arroyo was conspiring with other individuals to arrange the transport and sale of marijuana. McKenna stated Lopez-Arroyo made references to higher-ups who would dislike the fact that McKenna was unwilling to allow Lopez-Arroyo to follow the transport truck. (Tr. of Trial – Day 2, Doc. 135, p. 46.) Lopez-Arroyo also told McKenna that the house was trusting him with the marijuana; McKenna believed "the house" was a reference to Lopez-Arroyo's boss. *Id.* On one occasion, Lopez-Arroyo indicated he needed to phone someone. *Id.* at 63. McKenna and Lopez-Arroyo broke away from one another and Lopez-Arroyo phoned another individual. *Id.* McKenna believed Lopez-Arroyo was phoning his boss. *Id.* at 64. Further, the transcript of Lopez-Arroyo's recorded conversation with McKenna revealed that while explaining how the stash was divided he stated, "Those were from someone else. They were from two different ones, from the boss and the other ones." *Id.* at 94. Finally, at the drop off point in Phoenix, Lopez-Arroyo arrived to check the delivery with another unidentified male in his vehicle. *Id.* at 86.

Special Agent Eric Feldman was assigned to monitor the interactions of McKenna and Lopez-Arroyo from an undercover vehicle. Feldman testified he also observed actions indicating Lopez-Arroyo had arranged transport with another individual. (Doc. 134, p. 115.) McKenna informed Lopez-Arroyo he would leave a transport truck in a parking lot with the keys inside so Lopez-Arroyo could pick it up, transport it to another location, and load the marijuana into it. (Doc. 134, p. 72.) After McKenna dropped off the vehicle, Feldman observed an unidentified male pick up the truck and drive it to a car wash run by Lopez-Arroyo while being followed by a car thought to be Lopez-Arroyo's. (Doc. 134, p. 115-16.)

When the loaded truck was returned to the pick-up point, both Feldman and McKenna observed the same unidentified individual exit the loaded truck, re-enter the same car thought to be Lopez-Arroyo's, and drive away. (Doc. 134, p. 116; Doc. 135, p. 75.)

The Court of Appeals also agreed there was sufficient evidence of conspiracy. It stated, "Nor did the district court clearly err in determining that Lopez-Arroyo managed or supervised criminal activity that involved at least five participants." (CIV 13-1992, Doc. 12-4.)

In reviewing the record, which includes the evidence presented at trial prior to the guilty plea, the Court finds the record demonstrates that Valenzuela's actions were not deficient, and Lopez-Arroyo fails to show that but for Valenzuela's performance Lopez-Arroyo would not have pled guilty. The Court finds Lopez-Arroyo has not established that his counsel provided ineffective assistance regarding the failure to challenge the interpreter as alleged in Ground Two.

V.  *Ground Three: Actual Innocence on Count One*

Lopez-Arroyo alleges he is actually innocent of Count One. (CIV 13-1992, Doc. 7, p. 7.) However, a review of Lopez-Arroyo's appellate brief and the Ninth Circuit Memorandum decision issued in this case shows Lopez-Arroyo failed to assert an actual innocence claim on direct appeal. (CIV 13-1992, Doc. 8, p. 3.) Lopez-Arroyo's claim is procedurally precluded because he cannot meet the burden of showing actual innocence, nor does he show cause for his failure to raise the issue on appeal, or prejudice.

The Ninth Circuit has not affirmatively decided "whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). A claim is procedurally precluded if it could be addressed on direct review of the record created in the trial court but the issue was not presented on direct appeal. *Bousely v. United States*, 523 U.S. 614, 622 (1998). However, a petitioner can overcome this procedural default and achieve a federal review if he can successfully raise a freestanding claim of actual innocence. *Smith v. Baldwin*, 510 F.3d 1127, 1139-40 (9th Cir. 2007) (citing *Coleman v.*

*Thompsen*, 501 U.S. 722, 750 (1991). In order to prove actual innocence, "a petitioner must demonstrate that 'in light of new evidence, it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotations and citation omitted). "This new evidence must be reliable, and the reviewing court 'may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" Id. (quoting *Schup v. Delo*, 513 U.S. 298, 332 (1995)). The Court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial." *Id.* (citing *House v. Bell*, 547 U.S. at 538). On review, affidavits obtained subsequent to trial "are to be treated with a fair degree of skepticism." *Herrera*, 506 U.S. 390, 423 (1993).

For the reasons stated in Grounds One and Two, Lopez-Arroyo has failed to meet the burden of proving he is probably innocent of Count One. In this instance there is no newly discovered evidence, only Lopez-Arroyo's affidavit contradicting both his sworn testimony at his change of plea hearing and the corroborating evidence of guilt presented at trial.

Having failed a freestanding actual innocence claim, a petitioner can still attain federal review if he can "demonstrate both cause excusing his procedural default, and actual prejudice from the claim of error." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993)(*citing United States v. Frady*, 456 U.S. 152, 168 (1982)); *see Strickler v. Greene*, 527 U.S. 263, 264 (1999); *Baldwin*, 519 F.3d at 1146. "In order to establish cause for a procedural default, a petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him." *Baldwin*, 519 F.3d at 1146 (internal citation omitted). Lopez-Arroyo has not alleged any external objective factor that caused the procedural default.

As stated, Lopez-Arroyo did not raise an actual innocence claim on direct appeal. Lopez-Arroyo fails to present any allegations or external factors which prohibited him from asserting actual innocence on appeal. It follows that since he has not asserted any reason for his failure to directly appeal his claim, no resulting prejudice could have occurred. Lopez-Arroyo's claim of actual innocence is denied.

VI.  *Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court," or in a proceeding under 28 U.S.C. § 2253(c)(1). Here, the Petition is brought pursuant to 28 U.S.C. § 2255. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, a COA should issue when the prisoner shows, at least, that the jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would not find it debatable whether the motion stated a valid claim of the denial of a constitutional right and the Court finds that jurists of reason would not find it debatable whether this Court was correct in its procedural ruling.  A COA shall not issue as to Lopez-Arroyo's claims.

Any further request for a COA must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

. . . . .

. . . . .

19

Accordingly, IT IS ORDERED:

1. Lopez-Arroyo's Motion to Expedite Ruling of 28 U.S.C. 22 Proceedings (CIV 13-1992, Doc. 20) is GRANTED to the extent the Court issues its ruling herein.
2. Lopez-Arroyo's Motion under 28 U.S.C.§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CR 08-1126, Doc. 155, CIV 13-1992, Doc. 7) is DENIED.
3. Cause No. CIV 13-1992 is DISMISSED;
4. The Clerk of the Court shall enter judgment and shall then close its file on Cause No. CIV 13-1992.

Dated this 23rd day of September, 2015.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge